IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ROBERT PAUL HADE,       *

     Petitioner,       *       Civil Action No. RDB-13-01111

     v.       *       Criminal Action No. RDB-10-0786

UNITED STATES OF AMERICA,       *

     Respondent.       *

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

## MEMORANDUM OPINION

The *pro se* petitioner Robert Paul Hade has filed a Motion to Vacate, Set Aside, or Correct Sentence (ECF No. 76), pursuant to 28 U.S.C. § 2255. Petitioner argues that he received ineffective assistance of counsel for the following reasons: (1) Defense Counsel failed to challenge a search of his home; (2) Defense Counsel failed to request a writ of mandamus to order the government to follow their internal *Petite* Policy[1] against dual prosecutions; (3) Defense Counsel failed to allege Speedy Trial Act violations; (4) Defense Counsel failed to challenge the indictment; (5) Defense Counsel failed to mitigate Petitioner's culpability at the sentencing hearing; (6) Defense Counsel failed to attack the veracity of the Victim's statement; and (7) Defense Counsel did not serve as a meaningful adversary. Upon reviewing Petitioner's Motion and the Government's opposition thereto, this Court finds that no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2011). Because Petitioner has failed to demonstrate that his counsel provided ineffective assistance, Petitioner's Motion to Vacate, Set Aside, or Correct Sentence (ECF No. 76) is DENIED.

---

[1] As explained below, the *Petite* Policy guides the discretion of the officer of the Department of Justice on whether "to bring a federal prosecution based on substantially the same act(s) or transactions involved in a prior state or federal proceeding." U.S. Dep't of Justice, *United States Attorneys' Manual* 9-2.031 (1999).

<u>BACKGROUND</u>

The facts of this case are taken from the Redacted Plea Agreement (ECF No. 56).

Petitioner is a forty-three-year-old resident of Hagerstown, Maryland. *Id.* at 10. In May 2010, a

thirteen-year-old-child ("the child") reported to Child Protective Services that Hade sexually

abused her for a two-year period when she was between the ages of eight and ten. *Id.* at 10–11.

On May 15, 2010, Washington County, Maryland law enforcement officers executed a

search warrant at Hade's residence. *Id.* at 10. They recovered sexually explicit pictures on CDs

and a sexually explicit video of the child from the residence. *Id.* The officers also determined

that Hade captured nude photographs of the child victim using cameras manufactured in China

and Malaysia. *Id.* at 10–11. After Hade was arrested, he confessed that he produced the

pornography of the child victim. *Id.*

On December 16, 2010, a federal grand jury in the District of Maryland indicted

Petitioner on two counts of sexual exploitation of a minor for the purpose of producing child

pornography, in violation of Title 18, United States Code, § 2251(a). *See* Indictment at 1–2,

ECF No. 1. On June 8, 2011, Petitioner entered a guilty plea to Count One of the Indictment.

Ct. Tr., June 8, 2011, ECF No. 81–3.[2] On December 5, 2011, this Court sentenced Petitioner to

240 months imprisonment on Count One. *See* J. of United States District Court, December 5,

2011, ECF No. 81-2. On December 8, 2011, Petitioner filed a notice of appeal from the district

court's judgment. On May 17, 2012 the Fourth Circuit affirmed in part and dismissed in part

Petitioner's appeal. *See* J. of Fourth Circuit, ECF No. 68–2. Specifically, the Fourth Circuit

found that Petitioner exhausted all possible meritorious issues on appeal. *Id.* at 2. Subsequently,

on April 15, 2013, the Petitioner filed this pending Motion to Vacate under 28 U.S.C § 2255

---

[2] The Court dismissed Count Two pursuant to the plea agreement. *See* J. of United States District Court, December 5, 2011, ECF No. 81-2.

(ECF No. 76).   The Government filed its response brief (ECF No. 81) on July 19, 2013. On July 29, 2013, Petitioner filed (1) a Motion for Appointment of Counsel (ECF No. 82) to assist him in pressing his § 2255 Motion, and (2) an accompanying Motion for Continuance (ECF No. 83) to allow him time to consult with his new counsel upon appointment.  On August 21, 2013 Petitioner filed his reply as to the Motion to Vacate (ECF No. 84).[3]

As an initial matter, this Court addresses Petitioner's Motion for Appointment of Counsel.  There is no Sixth Amendment right to counsel to pursue a petition for collateral relief. *See Pennsylvania v. Finely*, 481 U.S. 551, 555 (1987).  A court may provide counsel for an indigent inmate pursuing a petition for habeas corpus "that the court determines that the interests of justice so require." 18 U.S.C. § 3006A(a)(2)(B). Rule 8(c) of the Rules Governing 2255 Cases provides that a court must appoint counsel "[i]f an evidentiary hearing is required." In this case, Petitioner is able to articulate his claims, the claims do not appear unduly complex, and no hearing is necessary. *See Smith v. United States*, No. AW-13-0796, 2013 WL 4605406, at *2 (D. Md. Aug. 28, 2013) (exercising discretion not to appoint counsel to assist with a § 2255 petition where no "exceptional circumstances" so required; case was not overly complex and petitioner was capable of adequately representing himself) (citing *Cook v. Bounds*, 518 F.2d 799, 780 (4th Cir. 1975)). Thus, there is no immediate need for counsel. Accordingly, the Motion for Appointment of Counsel (ECF No. 82) is DENIED.  Having concluded that the Petitioner's *pro se* Motion to Vacate under 28 U.S.C. § 2255 may be properly ruled upon as filed, this Court now addresses that Motion.

---

[3] The Petitioner also filed a Motion for Recusal (ECF No. 87), which will be DENIED by separate memorandum opinion and order.  Additionally, petitioner' Motion for Continuance (ECF No. 83), as well as his Motion for Calendar Advancement (ECF No. 88), are DENIED as MOOT. Finally, Petitioner's Motion to Appoint Counsel (ECF No. 82) is DENIED for the reasons set forth in this Memorandum Opinion.

<u>STANDARD OF REVIEW</u>

Documents filed *pro se* are "liberally construed" and are "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citation omitted). In order to establish a claim for ineffective assistance of counsel, a petitioner must prove both elements set forth by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 671 (1984). First, a petitioner must show that his counsel's performance was so deficient as to fall below an "objective standard of reasonableness." *Id.* at 688. In assessing whether counsel's performance was unconstitutionally deficient, courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. Second, a petitioner must show that his counsel's performance was so prejudicial as to "deprive the defendant of a fair trial." *Id.* at 687. In order to establish this level of prejudice, the petitioner must demonstrate that there is a "reasonable probability that, but for counsel's [alleged] unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Satisfying either of the two parts of the test alone is insufficient; rather, the petitioner must meet both prongs of the *Strickland* test in order to be entitled to relief. *See id* at 687. ("Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.").

<u>ANALYSIS</u>

In his Motion to Vacate, Petitioner makes seven arguments—namely, that Defense Counsel (1) failed to challenge a search of his home; (2) failed to request a writ of mandamus to order the government to follow their internal *Petite* Policy against dual prosecutions; (3) failed to allege Speedy Trial Act violations; (4) failed to challenge the indictment; (5) failed to mitigate Petitioner's culpability at the sentencing hearing; (6) failed to attack the veracity of the Victim's

statement; and (7) did not serve as a meaningful adversary. Finding that none of Petitioner's claims has any merit, this Court denies Petitioner's Motion to Vacate.

## I. Defense Counsel Did Not Provide Ineffective Assistance of Counsel When He Declined to Challenge the Search of Petitioner's Home.

Petitioner claims that Defense Counsel erred when he failed to argue that Washington County, Maryland law enforcement officers' execution of the search warrant for Petitioner's home was unreasonable. Specifically, Petitioner alleges that the law enforcement officers violated Rule 41 (e)(2)(ii) of the Federal Rules of Criminal Procedure because they executed the search warrant at an unreasonable hour between 10 p.m. and 6 a.m. in the absence of any extenuating circumstances that would have warranted a nighttime search. Petr.'s Reply at 3, ECF No. 84. Petitioner also asserts that the Fourth Amendment necessarily governs the execution of the search warrant and requires the Maryland law enforcement officers to conform their conduct to the specifications of Rule 41.

Rule 41 (e)(2)(ii) requires that a warrant must command the officer to "execute the warrant during the daytime, unless the judge for good cause expressly authorizes execution at another time." However, the Fourth Circuit has recognized that "Rule 41 applies only to federal search warrants involving a 'federal law enforcement officer.'" *United States v. Clyburn*, 24 F.3d 613, 616 (4th Cir. 1994) (citing Fed. R. Crim. P. 41(a)). Indeed, the Fourth Circuit held that Rule 41 was inapplicable in *Clyburn* because non-federal law enforcement officers requested and executed the warrant. *See id.* ("In this case, a local narcotics officer involved in a local investigation requested and received a warrant from a Sumter County magistrate. No federal officers became involved in this case until after the search warrant had been executed. Therefore, the procedural requirements of Rule 41 are not applicable.").

Likewise, in this case, state law enforcement officers from Washington County, Maryland requested and executed the search warrant of Petitioner's home.  *See* Ex. 4, Redacted Search Warrant; *see also* Petr.'s Reply at 3 (explaining that he was initially held on state charges); Order for Issuance of Bench Warrant, ECF No. 3 (ordering the arrest of Petitioner, who "is currently held in the Washington County Detention Center").  Therefore, the law enforcement officers' conduct during the search was solely subject to the requirements of Maryland law, not the requirements of Rule 41 of the Federal Rules of Criminal Procedure.  The United States Court of Appeals for the Fourth Circuit has previously affirmed this Court's ruling in that regard. *United States v. Claridy*, 601 F.3d 276, 283 (4th Cir. 2010) ("Because we conclude that the legal authorization for the search warrant in this case was Maryland law, not Rule 41(b), we reject [Petitioner's] argument that the evidence should be suppressed because its issuance did not comply with the requirements of Rule 41(b).").  Although Washington County officials may have executed the search outside of the "daytime" requirement of Rule 41(e)(2)(ii), this conduct is not governed by the Federal Rules of Criminal Procedure.

Because Petitioner's claim lacks merit, Defense Counsel did not provide ineffective assistance of counsel when he failed to challenge the sufficiency of the search warrant.  In particular, Petitioner cannot demonstrate that he would have been acquitted but for Defense Counsel's failure because Defense Counsel's action did not constitute an error.  *See Strickland*, 466 U.S. at 694 (holding that in order to satisfy the second prong of the objective test, a criminal defendant must demonstrate that there is a "reasonable probability that, but for counsel's [alleged] unprofessional errors, the result of the proceeding would have been different").

**II. Defense Counsel Did Not Err When He Declined to Request a Writ of Mandamus Against the Prosecution.**

Petitioner claims that Defense Counsel provided ineffective assistance of counsel by declining to challenge the Government's failure to follow the Department of Justice's Dual and Successive Prosecution Policy ("*Petite* Policy").  The *Petite* Policy "establishes guidelines for the exercise of discretion by appropriate officers of the Department of Justice in determining whether to bring a federal prosecution based on substantially the same act(s) or transactions involved in a prior state or federal proceeding."  U.S. Dep't of Justice, *United States Attorneys' Manual* 9-2.031 (1999); *see also Rinaldi v. United States*, 434 U.S. 22, 28 (1977) (stating that the *Petite* Policy is an internal procedure wherein the Department of Justice refuses "to bring a federal prosecution following a state prosecution except when necessary to advance compelling interests of federal law enforcement").  Fourth Circuit jurisprudence in this area effectively disposes of Petitioner's claim because the *Petite* Policy neither provides Petitioner with any personal rights nor offers license for courts to police compliance with that protocol.  *See United States v. Jackson*, 327 F.3d 273, 294 (4th Cir. 2003) ("That the Department of Justice has developed an internal protocol for exercising discretion and channeling prosecutorial resources does not provide license for courts to police compliance with that protocol, and it is well established that the *Petite* policy and other internal prosecutorial protocols do not vest defendants with any personal rights.").  As a result, the Government's alleged failure to follow the *Petite* Policy is of no moment because Defense Counsel could not have compelled the Government to follow the policy.  For this reason, Defense Counsel did not provide ineffective assistance of counsel when he declined to request a writ of mandamus; even if Defense Counsel had requested a writ of mandamus, the outcome in Petitioner's case would have been the same because the *Petite* Policy would not have rendered the Government's prosecution unlawful.

### III. Failure to Allege a Speedy Trial Act Violation.

Petitioner claims that Defense Counsel provided ineffective assistance of counsel when he declined to allege a violation of the Speedy Trial Act, 18 U.S.C. § 3161(b).  Petitioner's claim fails because the Government did not violate the Act.  The Speedy Trial Act requires an indictment to be filed within thirty days of a criminal defendant's arrest.  18 U.S.C. § 3161(b).  On October 12, 2010, the state prosecutor requested a continuance while the federal government investigated the case.  Petr.'s Reply at 5.  Although Petitioner seeks to use this event as a substitute for an arrest, the Fourth Circuit held that "the [Speedy Trial] Act is not triggered unless formal charges have been filed and are accompanied by an arrest."  *United States v. Thomas*, 55 F.3d 144, 148 (4th Cir. 1995).  Because federal law enforcement authorities did not arrest Petitioner on October 12, 2010, the Speedy Trial Act was not triggered.  Therefore, Defense Counsel did not provide ineffective assistance of counsel because even if Petitioner had filed a Motion to Dismiss for a Speedy Trial Act violation, the outcome would have been the same.  The Speedy Trial Act was never violated in this case because the grand jury indicted the Petitioner on December 16, 2010, and federal marshals subsequently arrested Petitioner on December 23, 2010.  Petr.'s Reply at 5–6; *see United States v. Iaquinta*, 674 F.2d 260, 267 (4th Cir. 1982) (stating "since there was no federal arrest of the defendants and no taking of them into federal custody until after they were indicted by a federal grand jury, there was no violation of the Speedy Trial Act in this prosecution").  In other words, the Government did not violate the Speedy Trial Act because federal officers arrested Petitioner after the Government *had already* indicted him.

Petitioner also claims that Defense Counsel provided ineffective assistance of counsel when he consented to the Government's request for a waiver of the Speedy Trial Act.  Petr.'s

Reply at 6; Def. Mot. to Exclude Time, ECF No. 25. This motion gave both parties an additional 70 days to prepare for trial. *See* Def. Mot. to Exclude Time, ECF No. 25. Petitioner does not meet his burden under *Strickland* in proving that Defense Counsel's consent to the Government's waiver request prejudiced his case. He fails to explain how the mutually beneficial delay, which provided more time for Defense Counsel to prepare his case (ECF No. 25), prejudiced Petitioner. *See, e.g.*, *United States v. Fabian* 798 F. Supp. 2d 647, 671 (D. Md. 2011) (holding defense counsel's failure to argue a Speedy Trial Act violation did not result in prejudice because there was no proof the delay affected the outcome of the case). If the delay had any effect on Petitioner's case, it benefitted Petitioner because the delay provided Defense Counsel with more time to negotiate a plea offer with the Government. *See United States v. Ford*, 288 F. App'x 54, 58 (4th Cir. 2008) (delays in trial "resulting from plea negotiations . . . are excludable"); *West v. United States*, 228 F. App'x 890, 896–897 (11th Cir. 2007) (holding defendant was not entitled to evidentiary hearing on ineffective assistance of counsel claim because speedy trial waiver allowed defense counsel to prepare for the case). Thus, Defense Counsel's decision to consent to the Government's motion for a waiver of the Speedy Trial Act did not constitute ineffective assistance of counsel because, even if Defense Counsel had objected to the motion and Petitioner's case had proceeded to trial, it is inconceivable that additional preparation time negatively affected the outcome of Petitioner's case. *See Hill v. Lockhart*, 474 U.S. 52, 59 (1985) ("The second, or 'prejudice' requirement [. . .] focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process."); *United States v. Thomas*, 305 F. App'x 960, 964 (4th Cir. 2009) (finding no ineffective assistance of counsel where alleged violation of Speedy Trial Act did not affect outcome of the case even assuming counsel would have moved to dismiss the indictment).

**IV. Failure to Challenge the Indictment.**

Petitioner claims that Defense Counsel provided ineffective assistance of counsel when he declined to challenge the sufficiency of his indictment. Petr.'s Reply at 7. Specifically, Petitioner claims that Congress does not have authority under the Commerce Clause to regulate child pornography. *Id.* Alternatively, Petitioner claims that 18 U.S.C. § 2251 did not prescribe punishment for a criminal defendant who only produced child pornography locally. *Id.*

This Court notes that Petitioner attempts to use this pending Motion to Vacate in order to re-litigate his Commerce Clause claim because he previously raised this point on direct appeal to the United States Court of Appeals for the Fourth Circuit. *See* J. of Fourth Circuit at 2, ECF No. 68-2. In Appellate Counsel's[4] *Anders* Brief,[5] she "raise[d] as a possible issue for review whether § 2251(a) is, as applied to [Petitioner], an unconstitutional exercise of Congress's power under the Commerce Clause." *Id.* Ultimately, the Fourth Circuit dismissed the appeal on the grounds that Petitioner validly waived his right to an appeal, but it also noted that the Petitioner's appeal was without merit. *See id.* at 5 n.1 ("We nonetheless conclude that the issue raised in Hade's *Anders* and pro se supplemental briefs is without merit."). Furthermore, the Fourth Circuit noted that "ineffective assistance does not conclusively appear on the record." *Id.*

Nevertheless, Petitioner's attempt to re-litigate this Commerce Clause claim fails because it is substantively meritless. Congress has broad authority under the Commerce Clause to punish conduct that is purely intrastate when it affects an interstate market. *See Gonzales v. Raich*, 545 U.S. 1, 17 (2005) ("Our case law firmly establishes Congress' power to regulate purely local

---

[4] Petitioner had separate Defense Counsel when he appealed the outcome of his case to the Fourth Circuit.
[5] In *Anders v. California*, the Supreme Court of the United States ruled "if counsel finds his [client's] case to be wholly frivolous, after a conscientious examination of it, he should so advise the court and request permission to withdraw. That request must, however, be accompanied by a brief referring to anything in the record that might arguably support the appeal." 386 U.S. 738, 744 (1967).

activities that are part of an economic 'class of activities' that have a substantial effect on interstate commerce."). Consistent with *Gonzales*, the Fourth Circuit has found that Congress's power under the Commerce Clause extends to wholly intrastate production of child pornography. *See United States v. Forrest*, 429 F.3d 73 (4th Cir. 2005).

In *Forrest*, the defendant was convicted of sexual exploitation of a minor for taking pornographic images of a thirteen-year-old boy. *Id.* at 76. The Government produced evidence that the defendant used both a digital camera "manufactured in Asia" and a Polaroid camera "manufactured in Massachusetts." *Id.* at 76. The defendant contended that "Congress's Commerce Clause authority does not extend to his private, intrastate production and possession of child pornography." *Id.* at 75–76. The Fourth Circuit rejected this argument, reasoning that under *Raich* "the Commerce Clause empowers Congress to regulate purely local intrastate activities, so long as they are part of 'an economic class of activities that have a substantial effect on interstate commerce.'" *Id.* at 78 (quoting *Raich*, 545 U.S. at 16). The Fourth Circuit proceeded to find that the intrastate production of child pornography was part of the requisite economic class because it involves the production, distribution, and consumption of commodities. *Id.* at 78. Furthermore, the Court held that the prohibition of child pornography was essential to the regulation of an illegal interstate market. *Id.* Ultimately, the Court held that "[the defendant's] constitutional challenge, which rests entirely on the asserted *de minimis* effect of his own activities, must fail." *Id.* at 79.

In a similar fashion, Petitioner locally produced child pornography with digital cameras that traveled in foreign commerce. *See* Redacted Plea Agreement at 10, ECF No. 56 (explaining that Petitioner produced child pornography using cameras manufactured in China and Malaysia). As a result, Defense Counsel's failure to object to the sufficiency of the indictment did not

constitute ineffective assistance of counsel because, as the Fourth Circuit explained in *Forrest*, Congress has the power to criminalize local production of child pornography because it "substantially affect[s] interstate commerce" and it is "essential to the regulation" of an illegal market. *Forrest*, 429 F.3d at 78. The Court noted "this concern is especially salient in the context of child pornography, because much of the material traded on that interstate market is homemade." *Id.* (citing *Buculei*, 292 F.3d at 329). Under *Strickland*, Defense Counsel's decision not to challenge the sufficiency of the indictment would not have changed the outcome of the plea process because the indictment was entirely valid. Therefore, Petitioner's argument fails.

Petitioner also claims that, in 2006, 18 U.S.C. § 2251(a) punished only criminals that knew or had reason to know that images traveled in or were to be advertised in interstate commerce. Petr.'s Reply at 7. This is a mischaracterization of the law. The statute provided:

> Any person who employs, uses, persuades, induces, entices, or coerces any minor to engage in, or who has a minor assist any other person to engage in, or who transports any minor in interstate or foreign commerce, or in any Territory or Possession of the United States, with the intent that such minor engage in, any sexually explicit conduct for the purpose of producing any visual depiction of such conduct, shall be punished as provided under subsection (e), if such person knows or has reason to know that such visual depiction will be transported in interstate or foreign commerce or mailed, **if that visual depiction was produced using materials that have been mailed, shipped, or transported in interstate or foreign commerce by any means,**[6] including by computer, or if such visual depiction has actually been transported in interstate or foreign commerce or mailed.

18 U.S.C. § 2251(a) (2006) (emphasis added). Again, the facts of this case are clear; Petitioner produced pornographic images of a child using cameras that had been shipped in interstate commerce. *See* Redacted Plea Agreement at 10, ECF No. 56. Thus, Defense Counsel did not

---

[6] This phrase actually originated in the Protection of Children from Sexual Predators Act of 1998, Pub. L. No. 105–314, § 201 (1998).

provide ineffective assistance of counsel because he had no grounds on which to challenge the sufficiency of the indictment.

**V.  Failure to Investigate and Use Mitigating Evidence and Witnesses.**

Defense Counsel did not provide ineffective assistance of counsel when he declined to investigate and use the information Petitioner proffered to him.  Specifically, Petitioner claims that Defense Counsel failed to seek out and implore Petitioner's relatives, friends, and coworkers to write letters on his behalf.  Petr.'s Reply at 10.  Petitioner further claims that Defense Counsel could have shown that Petitioner "turned in offers of child pornography before and after the dates on the images in question."[7]  *Id.*  Petitioner also claims that Defense Counsel failed to mitigate the Petitioner's guilt when he declined to argue passionately in favor of Petitioner at sentencing.  *Id.*

Defense Counsel did not provide ineffective assistance of counsel because, contrary to what Petitioner claims, Defense Counsel presented mitigating evidence.  Defense Counsel argued for a more lenient sentence by highlighting Petitioner's previous crime-free life.  Ct. Tr., Dec. 5, 2011, ECF No. 65.  Furthermore, Defense Counsel wrote a well-drafted sentencing memorandum arguing for Petitioner's sentence to be at the lower end of the guidelines range.  Sentencing Memorandum, ECF No. 49.

Defense Counsel's decision not to seek out further evidence of Petitioner's previous crime-free life do not constitute ineffective assistance of counsel because he made a strategic decision to mitigate in a particular way in accordance with his reasonable professional judgment.  *See Strickland*, 466 U.S. at 690–91 (reasoning that defense counselors can limit their investigations when they exercise reasonable professional judgment).  Indeed, Defense Counsel

---

[7] Petitioner does not explain clearly what he means by "turned in offers of child pornography."  He merely alleges that he had some relationship with the Maryland State Police.  In any event, this is of no moment in this case because this Court finds that Defense Counsel presented mitigating evidence.

acted reasonably because he already possessed evidence of Petitioner's previous crime-free life and did his best to present that to the Court during the sentencing hearing. Although Petitioner claims the contrary, Defense Counsel was under no obligation to exhaustively investigate every detail of Petitioner's past. *See Burger v. Kemp*, 483 U.S. 776, 795–95 (1987) (holding that defense counsel exercised reasonable professional judgment when he declined to mount an all-out investigation into the criminal defendant's past because he already interviewed potential witnesses who had been called to his attention).

## VI. Veracity of Victim's Statement.

Petitioner claims that Defense Counsel provided ineffective assistance of counsel when he declined to challenge the truthfulness of the statements of the child victim and the mother of the child victim at Petitioner's sentencing hearing. Petr.'s Reply at 11. In the victim statements, both the child victim and the mother discussed the "tension" the sexual abuse imposed on their family and social relationships. *See* Sealed Victim Statement, ECF No. 54. The statements emphasized the child victim's decline in school attendance and performance due to "emotional distress and depression" and the "alarming" impact the abuse has had on their daily lives. *See* Sealed Victim Statement, ECF No. 54. Specifically Petitioner argues that Defense Counsel was ineffective because he did not challenge the child victim's statement that the child victim's grades suffered because of the crime. Petr.'s Reply at 11. In particular, the Petitioner claims that Defense Counsel should have located "newspaper articles" indicating the child victim's academic performance on honor roll to show that the child victim's statements concerning a decline in academic performance were "false or greatly inflamed half-truths." *See* Petr.'s Mot. to Vacate, ECF No. 76 at 11. Petitioner also argues that Defense Counsel failed to object to purported hearsay statements the Government relied on during sentencing. *Id.*

Although Petitioner disagrees with Defense Counsel's decision, this decision comes within the "the strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. Indeed, in order to overcome this presumption, Petitioner must again show that it was not a sound legal strategy to choose not to attack the veracity of the statements at the sentencing hearing. *Id.* (explaining that the "defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy'") (quoting *Michel v. Louisiana*, 350 U.S. 91, 100 (1955)). Petitioner fails to allege how Defense Counsel's decision constituted "deficient attorney performance" or unsound legal strategy in any way. *Strickland*, 466 U.S. at 684. Petitioner merely alleges that the statements were inflammatory and that a "good attorney could have [challenged the statements] without greatly upsetting the supposed victim and the Court." Petr.'s Reply at 11. These bald allegations do not overcome the presumption that Defense Counsel's choice not to attack the veracity of the statements constituted sound legal strategy. *Strickland*, 466 U.S. at 687 (to prove deficient performance requires a showing "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment").

To the contrary, Defense Counsel's choice not to attack the veracity of a child victim's recovery was based on "professionally reasonable judgment" and "strategic choices" *Strickland*, 466 U.S. at 681. Attacking the veracity would neither have been very helpful nor necessary to Petitioner's defense. *Accord United States v. Hammer*, 60 M.J. 810, 821 (A.F. Ct. Crim. App. 2004) (reasoning that child abuse cases are difficult to defend, and as a result, "the defense counsel's decision not to interview [the child victim] was part of a reasonable trial strategy"); *cf. Parker v. Scott*, 394 F.3d 1302, 1322 (10th Cir. 2005) (reasoning that defense counsel did not provide ineffective assistance of counsel when he decided not to challenge the veracity of a child

victim's statement because "rebuttal of this testimony is not necessarily helpful or necessary to

[the criminal defendant's] case").  In fact, challenging the child victim's statements after already

pleading guilty may have been detrimental to Petitioner in light of the fact that Defense Counsel

strategically relied on Petitioner's "remorse" and acceptance of guilt as a mitigating factor during

sentencing.  *See* Def.'s Sentencing Mem. at 5, ECF No. 49.  Further, had Defense Counsel

argued that Petitioner should have received a lower sentence because the child victim's statement

was false or misleading, it would not have had any bearing on the fact that Petitioner admitted to

the egregious acts of taking and possessing pornographic images and videos of the child victim

for two years. *See* Redacted Plea Agreement (ECF No. 56).

Even assuming *arguendo* Defense Counsel's choice not to attack the veracity of the child

victim's recovery was unreasonable, Petitioner still would have to demonstrate that "but for"  the

Defense Counsel's error there is a "reasonable probability" that "the result of the proceeding

would have been different."  *Strickland*, 466 U.S. at 694 ("A reasonable probability is a

probability sufficient to undermine confidence in the outcome.").  Here, Petitioner cannot prove

that but for Defense Counsel's failure to attack the veracity of a child victim's recount of the

crime, he would have been granted a lower sentence.  Considering the child victim was sexually

abused since she was eight years old and Petitioner admitted to the crime, the child victim

statement's veracity on such minuscule and trivial details such as how significant her grades

dropped surely holds little or no weight in sentencing.  Accordingly, Petitioner's claim fails

under both prongs of *Strickland*.

**VII. Failure to Serve as a Meaningful Adversary.**

Petitioner claims that Defense Counsel did not serve as a meaningful adversary for three

reasons: (1) Defense Counsel failed to represent Petitioner because Defense Counsel only offered

to get Petitioner a plea deal; (2) Defense Counsel had a conflict of interest with Petitioner's case because Defense Counsel did not receive monetary compensation; and (3) Defense Counsel prejudiced Petitioner's case because Defense Counsel used inflammatory statements during the sentencing hearing. Because none of the reasons offered by Petitioner support a claim that Defense Counsel failed to serve as a meaningful adversary, this claim fails.

In examining whether Defense counsel represented Petitioner effectively when he only offered to get Petitioner a plea deal, the appropriate inquiry is whether proceeding to trial would have been objectively reasonable in light of the facts. *See United States v. Fugit*, 703 F.3d 248, 260 (4th Cir. 2012) (reasoning that when a criminal defendant challenges his guilty plea on grounds of ineffective assistance of counsel,"[t]he challenger's subjective preferences, therefore, are not dispositive; what matters is whether proceeding to trial would have been objectively reasonable in light of all the facts"). Petitioner "must convince the court" that a decision to go to trial "would have been rational under the circumstances." *Padilla v. Kentucky*, 559 U.S. 356, 372 (2010).

As the Petitioner was advised at the time of his guilty plea, he was at risk of a thirty-year sentence had he proceeded to trial. *See* Ct. Tr., June 8, 2011, at 11, ECF No. 81-3 (inquiring "do you understand that the maximum sentence provided by statute for this particular offense is not less than 15 years and not more than 30 years imprisonment?"). Also, Petitioner was facing another count of sexual exploitation of a minor in violation of U.S.C § 2256 which was subsequently dropped as part of the plea agreement. *See* Redacted Plea Agreement (ECF No. 56). Further, after Petitioner's arrest on May 15, 2010, he admitted to producing child pornography to law enforcement. *See* Redacted Plea Agreement (ECF No. 56). Given this consideration, Defense Counsel acted reasonably when he advised Petitioner to accept the plea

agreement because the Government agreed to move for a three-level reduction in Petitioner's

base offense level. *See* Ct. Tr., June 8, 2011, at 16, ECF No. 81-3 ("There will be a two-level

reduction for your acceptance of responsibility, and it's anticipated the Government will move

for a third level at the time of sentencing, so it's anticipated that your base offense level will be

37."). For this reason, Petitioner's guilty plea was favorable to him because it foreclosed the

possibility that he would serve a thirty-year sentence. *See Fields v. Attorney Gen. of Md.*, 956

F.2d 1290, 1299 (4th Cir. 1992) ("The voluntary and intelligent character of Fields' plea bargain

is further evidenced by the fact that the plea agreement was favorable to him and accepting it

was a reasonable and prudent decision.").

Petitioner's twenty-year guilty plea was also favorable to him in light of the fact that he

confessed to the crime. *See Pilla v. United States*, 668 F.3d 368, 373 (6th Cir. 2012) (holding

that where defendant "faced overwhelming evidence of guilt" and "had no rational defense,"

pleading guilty was not unreasonable given that if he would have been convicted "he would have

face a longer term of incarceration). Also, the Fourth Circuit noted while "pleading guilty

generally involves a conscious decision to accept both the benefits and burdens of a bargain[,]

[t]hat decision may not be lightly undone by buyer's remorse on the part of one who has reaped

advantage from the purchase." *United States v. Fugit*, 703 F.3d 248, 260 (4th Cir. 2012).

Furthermore, Defense Counsel represented Petitioner meaningfully when he filed a

Supplemental Motion for Medical Treatment (ECF No. 33) and a well-written Sentencing

Memorandum (ECF No. 49). Defense Counsel's Sentencing Memorandum dutifully represented

how recent federal sentencing jurisprudence and Petitioner's personal background militated in

favor of a sentence within the lower range of the Federal Sentencing Guidelines. Def's.

Sentencing Mem. at 2–9, ECF No. 49. This is a far cry from the type of activity that constitutes

a failure to represent. *See United States v. Leonti*, 326 F.3d 1111, 1121–22 (9th Cir. 2003) (reasoning that defense counsel failed to represent his client when he "made no attempt to ascertain what the government wanted from Leonti, or how his cooperation might be carried out"). Because Defense Counsel dutifully attempted to secure the lowest possible sentence, Defense Counsel represented Petitioner in more ways than simply offering to get a plea deal for Petitioner.

In regard to Petitioner's second argument, Defense Counsel did not provide ineffective assistance of counsel due to a conflict of interest. Specifically, Petitioner claims that "[c]ounsel's remark at our first meeting that he normally makes $500.00 an hour and his lack of assistance on behalf of the Defendant resulted in ineffective assistance of counsel." Petr.'s Mot. at 6. Essentially, Petitioner claims that Defense Counsel failed to serve as a meaningful adversary because Defense Counsel did not receive monetary compensation. This claim fails because, as explained earlier, Defense advocated on Petitioner's behalf to decrease the length of Petitioner's ultimate sentence. Therefore, Defense Counsel's conduct did not fall below an objectively reasonable level of performance under *Strickland*.

Petitioner's third contention is similarly unsuccessful as Defense Counsel did not fail to serve as a meaningful adversary due to alleged inflammatory remarks that he made during the sentencing hearing. Specifically, Petitioner alleges three of Defense Counsel's statements show prejudice:

1) "Indeed, a little part of me makes me glad I had boys."

2) "This is the kind of offense which must make a reasonable person's skin crawl."

3) "Words like ghastly and unspeakable don't even begin to scratch the surface."

Petr.'s Reply at 9–10.

In order to show prejudice, Petitioner must demonstrate that counsel's deficient performance rendered the result of the proceeding unreliable or unfair. *See Strickland*, 466 U.S. at 687 (stating that to show prejudice, a petitioner must establish "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable"); *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993) ("Unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right which the law entitles him to.").

When Defense Counsel made these statements at Petitioner's sentencing hearing, he did not deprive the Petitioner of any substantive or procedural right. Instead, Defense Counsel used this language as an appeal for clemency. This is obvious because Defense Counsel's immediate point after using these statements was "[t]hat being said, there does come a point when the statutory imperative imposed by Congress must be taken into account by this Court." Ct. Tr., Dec. 5, 2011 at 17, ECF No. 81-4. Defense Counsel further explained that Congress already prescribed the appropriate sentence for this crime, and as a result, this Court should not escalate Petitioner's ultimate sentence due to the egregious facts of this case. *Id.* at 17–18. Furthermore, Defense Counsel explained how any escalation in the sentence amounts to double counting. *Id.* When Defense Counsel proffered the statements listed above he used this language to demonstrate that those feelings "should not justify the imposition of the sentence called for by the government." *Id.* at 20. In light of the full context of these statements, this Court finds that Defense Counsel's statements were made to decrease Petitioner's sentence, and as a result, they did not deprive the Petitioner of any substantive or procedural right. To the contrary, Defense Counsel made a passionate appeal for a shorter sentence than the one that Petitioner ultimately received.

Moreover, none of the reasons Petitioner cites as evidence that Defense Counsel failed to serve as a meaningful adversary overcome the strong presumption of truth afforded to Petitioner's statements at the plea colloquy in this case. *See Fields*, 956 F.2d at 1299 ("Absent clear and convincing evidence to the contrary, a defendant is bound by the representations he makes under oath during a plea colloquy."). At Petitioner's arraignment, the following dialogue occurred between the Court and the Petitioner:

> THE COURT: All right. And have you fully discussed these charges with your attorney?
>
> THE DEFENDANT: Yes, I have.
>
> THE COURT: Have you discussed the whole situation with him, including the evidence in the case, witnesses you might want to call if the case proceeded to trial, and the possibility of a trial, and even an appeal if you were found guilty?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: And are you fully satisfied with [your attorney] and his representation and the advice which he's given you?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: All right. Tell me in your own words the reason for your satisfaction.
>
> THE DEFENDANT: He seems to be very forthcoming, upright, and honest.
>
> THE COURT: And is there anything you've asked [your attorney] to do which he's not done?
>
> THE DEFENDANT: To the best of my knowledge, no, sir.

Ct. Tr., June 8, 2011 at 6, ECF No. 81-3. Through this colloquy, Petitioner firmly stated and affirmed that he was content with Defense Counsel's representation. Without clear and convincing evidence to the contrary, Petitioner is bound to his statement that Defense Counsel served as an effective adversary.

## CONCLUSION

Petitioner's claims do not demonstrate that Defense Counsel provided ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668 (1984). For the reasons stated above, Petitioner's Motion to Vacate, Set Aside, or Correct Sentence (ECF No. 76) is DENIED. Additionally, for the reasons stated above, Petitioner's Motion to Appoint Counsel is DENIED. Subsequent to these motions, Petitioner filed a Motion for Continuance (ECF No. 83) and a Motion for Calendar Advancement (ECF No. 88). Because the Motion to Vacate and the Motion for Appointment of Counsel have now been decided, the Motion for Continuance and Motion for Calendar Advancement are now DENIED AS MOOT.

A certificate of appealability shall not issue absent "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2) (2000). A petitioner satisfies this standard by demonstrating that reasonable jurists would find that an assessment of the constitutional claims is debatable and that any dispositive procedural ruling dismissing such claims is likewise debatable. *Miller-El v. Cockrell*, 537 U.S. 322, 336–38 (2003); *Rose v. Lee*, 252 F.3d 676, 683–84 (4th Cir. 2001). Because reasonable jurists would not find Petitioner's claims debatable, a certificate of appealability is DENIED.

A separate Order follows.

Dated: March 19, 2014

                                    _____/s/_____

                                    Richard D. Bennett
                                    United States District Judge